

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JPL/TJT:MGD  
F. #2021R00827

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 9, 2024

By ECF

The Honorable Hector Gonzalez  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. John Yiu  
                Criminal Docket No. 23-89 (HG)

Dear Judge Gonzalez:

      The government respectfully submits this letter in anticipation of sentencing in the above-referenced case, currently scheduled for October 15, 2024 at 2:30 p.m. and in response to the sentencing memorandum filed by the defendant John Yiu (the "defendant" or "Yiu"), dated October 4, 2024 ("Def. Mem."). (ECF No. 39.)

      According to the pre-sentence investigation report filed on May 10, 2024 (the "PSR"), the defendant's total offense level under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") is level 17 and his Criminal History Category is I, which yields an applicable Guidelines range of imprisonment of 24 to 30 months. (See PSR at ¶¶ 68, 108.)

      The government respectfully requests that the Court impose a sentence within the Guidelines range. A sentence of imprisonment between 24 to 30 months would accomplish the goals of Title 18, United States Code, Section 3553(a) ("Section 3553(a)").

I.    The Offense Conduct

      Between August 2019 and January 2021, Yiu, together with co-conspirators including Amanda Hon, Si Ci Zhu and Jian Ai "Maggie" Chen,[1] carried out a fraudulent scheme at AC Pharmacy ("AC") whereby claims were submitted to Medicare and Medicaid for

---

[1] Hon (22-CR-60), Zhu (22-CR-14) and Chen (23-CR-255), as well as others such as Chi Kwan "Ken" Wong (23-CR-88), have pleaded guilty before Your Honor to their roles in the conspiracy. Chen was sentenced on July 17, 2024, to 30 months' imprisonment. United States v. Chen, 23-CR-255, ECF No. 26.

prescription drugs that were procured by the payments of bribes and kickbacks, not medically necessary, and not actually dispensed to beneficiaries. (PSR ¶ 26.)

In particular, Hon, Chen and Zhu, as well as other co-conspirators, agreed to pay, and caused to be paid, illegal bribes and kickbacks to individuals associated with a medical clinic referred to in the indictment as Clinic-1, in exchange for the referral of Clinic-1 patients to AC. (PSR ¶ 27.) Chen was employed as a medical assistant at Clinic-1 and was instrumental in arranging the kickback relationships, including with Yiu, a physician at Clinic-1. Yiu wrote prescriptions absent medical necessity, including expensive medications such as diclofenac epolamine (which he had generally not prescribed prior to beginning to accept kickbacks from Chen and his co-conspirators), to patients who then brought their prescriptions to AC. (PSR ¶ 31.)

Additionally, Hon and Chen, as well as other co-conspirators, paid bribes and kickbacks to patients so that they would bring their prescriptions to be filled at AC, including but not limited to diclofenac epolamine prescribed by physicians at Clinic-1 such as Yiu, and so AC could take for themselves the value of patients' Medicare over-the-counter ("OTC") benefits.[2] The bribes typically took the form of cash-equivalent supermarket coupons. (PSR ¶ 37.) Between January 2012 and January 2021, AC and its sister pharmacy, A Star Pharmacy ("A Star"), paid approximately $5 million for gift certificates to supermarkets near the Scheme Pharmacies. (PSR ¶ 39.)

In approximately 2017, the scheme established at AC expanded to the newly-established A Star, where Chen also received bribes in exchange for patient referrals. At A Star, Ken Wong provided information regarding highly profitable prescription drugs to Chen, as well as Hon and others, which Chen used to obtain prescriptions from Clinic-1. The lucrative medications Wong identified included diclofenac epolamine, which Yiu began prescribing to AC patients when he joined the conspiracy. (PSR ¶ 32.) Some, if not all, of the prescriptions Wong assisted in procuring were medically unnecessary and were prescribed in exchange for kickbacks and bribes. (PSR ¶ 30.) A Star then billed beneficiaries' and recipients' insurance plans for dispensing those medications without regard to medical necessity. (PSR ¶ 33.)

Yiu's conduct resulted in a loss to government health care programs in the amount of approximately $624,959.45. For his participation in the conspiracy, Yiu was paid approximately $397,404.43 in kickbacks. (Plea Agreement ¶ 6.)

II. Procedural Background

On February 28, 2023, the defendant was indicted on charges of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count One), conspiracy to solicit and receive health care kickbacks, in violation of 18 U.S.C. § 371 (Count Two), and soliciting and

---

[2] Certain Medicare plans provided their beneficiaries with debit cards (the "OTC Cards") containing funds that were to be used for the purpose of purchasing certain designated OTC items, such as painkillers and first aid materials. The balances on the OTC Cards were renewed on a monthly basis. (PSR ¶ 11.)

receiving health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(B) (Counts Three through Six). (See PSR ¶ 43; Indictment ¶¶ 15-21, Docket Entry 1.) On March 6, 2024, the defendant pleaded guilty to Count One of the Indictment. (PSR ¶ 1.)

    III.    The Sentencing Guidelines

        1.    The PSR's Guidelines Calculation

The Guidelines calculation set forth in paragraphs 59 through 68 of the PSR, as modified by the Addendum, and as set forth in the parties' plea agreement, is as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 6 |
| Plus: Loss more than $550,000 (§ 2B1.1(b)(1)(H)) | +14 |
| Plus: Abuse of a position of trust (§ 3B1.3) | +2 |
| Minus: Zero-point offender (§ 4C1.1) | -2 |
| Total: | 20 |

The base offense level is reduced by three levels pursuant to Guidelines Section 3E1.1 in light of the defendant's acceptance of responsibility and timely plea of guilty, for a total offense level of 17. (PSR ¶¶ 66-67.) Accordingly, based upon a total offense level of 17 and a criminal history category of I, the applicable Guidelines range as calculated in the PSR, as amended by the Addendum, and as stipulated in the Plea Agreement, is 24 to 30 months' imprisonment. (PSR ¶ 108; Plea Agreement ¶ 2.)

        2.    Yiu's Objection to the PSR

On August 19, 2024, Yiu filed an objection to the PSR's observation that his medically unnecessary prescriptions could merit an upward departure. (ECF No. 35 (the "Objection")). The government filed its response on October 8, 2024. (ECF No. 40.) The government incorporates its response by reference here.

To the extent the defendant's sentencing memorandum focuses on medically-unnecessary prescriptions besides diclofenac epolamine, the government does not intend to pursue any argument at sentencing pertaining to such prescriptions, and the government does not request that the Court depart upwardly. Nonetheless, as explained in the government's response to the Objection, the Court can and should conclude that at least some of the defendant's diclofenac epolamine prescriptions were medically unnecessary.[3]

---

[3] The defendant argues that the government must meet the standard set forth in United States v. Vaid, 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) ("as to each individual claim that the Government intends to prove was fraudulent because goods or services were either medically unnecessary or not provided, it must identify…the claim and whether the goods or was not provided or was medically unnecessary."). Vaid, a non-binding opinion, is inapposite

3

The defendant cites <u>United States v. Young</u>, 932 F.2d 1035 (2d Cir. 1991), for the proposition that "it is the materials supporting the plea – the allocution statement, the plea agreement, and the indictment – that determine the scope of offense conduct." Def. Mem. at 11. Based on this purported holding in <u>Young</u>, the defendant argues that his failure to admit to prescribing medically unnecessary drugs precludes the government from arguing the matter at sentencing. <u>Id.</u> But the holding the defendant recites does not appear in <u>Young</u>, nor does Young bear on the scope of the offense conduct that the Court may consider at sentencing. <u>See Young</u>, 932 F.2d at 1036-37. Rather, <u>Young</u> addresses restitution, for which there are specific statutory provisions as to what losses a court may or may not include. <u>See id.</u>[4] Further, by the defendant's own admission, the allegations in the Indictment may be considered by the Court in fashioning its sentence. <u>See</u> Def. Mem. at 11 (including the indictment as a source from which the Court may "determine the scope of offense conduct"). The Indictment specifically alleged that some of Yiu's prescriptions were not medically necessary.

The defendant further argues that <u>United States v. Adams</u>, 448 F.3d 492 (2d Cir. 2006), requires all of the facts pertaining to offense conduct to be on the record at the time of the guilty plea. Def. Mem. at 11. In <u>Adams</u>, the defendant appealed from the denial of his motion to withdraw a plea of guilty. <u>Id.</u> at 499. The Second Circuit held that the plea allocation and evidence in the record at the time of the plea were insufficient to establish a factual basis for the <u>elements</u> of the crime to which the defendant pleaded guilty, which included statutory penalty enhancements. <u>Id.</u> at 500. The decision did not address the offense conduct that the Court may consider at sentencing, which goes well beyond the mere elements of the offense and what is admitted by the defendant at allocution. <u>See</u> U.S.S.G. § 1B1.4 (the sentencing court may consider "any information concerning the background, character and conduct of the defendant" in "determining the sentence to impose . . ."); <u>see also</u> <u>United States v. Washington</u>, 103 F.4th 917, 923 (2d Cir. 2024) ("[A] judge selecting a sentence within a statutorily authorized range is not limited . . . to considering facts found by a jury or admitted by the defendant.").

In short, while the government does not request that the Court depart upwardly from the Guidelines range, the defendant is wrong in arguing that the offense conduct must exclude medical necessity. <u>See</u> Def. Mem. at 10. Medical necessity, or lack thereof, is a factor that the Court may – but is not required to – take into account at sentencing, and in particular when considering the nature, circumstances and seriousness of the offense. <u>See</u> 18 U.S.C. 3553(a); U.S.S.G. § 1B1.4. The defendant's arguments to the contrary should be rejected.

---

because it dealt with a different procedural posture: the opinion addressed a motion for a bill of particulars, rather than sentencing.

[4] <u>United States v. Goodrich</u>, 12 F.4th 219, 230 (2d Cir. 2021), cited by the defendant for the same principle, is likewise a case about restitution rather than offense conduct. Moreover, the restitution argument focused on whether the defendant could be held responsible for the losses caused by his co-conspirators, which is not at issue here. <u>Id.</u> at 230-33.

4

IV.   A Custodial Sentence Within the Guidelines Range is Appropriate in this Case

The government respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.  See 18 U.S.C. § 3553(a).  The nature and circumstances of this case, the history and characteristics of the defendant, the need to promote respect for the law and provide just punishment, the need for specific and general deterrence and the need to avoid sentencing disparities (together, the "3553(a) factors") justify a custodial sentence between 24 to 30 months.

1. The Nature and Circumstances of the Offense and Characteristics of the Defendant

A custodial sentence between 24 to 30 months is appropriate considering the nature and circumstances of this offense and the defendant's characteristics.  As described in Yiu's sentencing memorandum, he worked hard to obtain his medical license.  Def. Mem. at 5.  But by participating in this conspiracy, the defendant traded on that license, and on his patients, in exchange for hundreds of thousands of dollars in cash.  He knew what he was doing was wrong, and he did it anyway.  Ultimately the defendant's conduct resulted in a loss to federal health care programs of over $600,000.

In his sentencing memorandum, the defendant argues that he should receive a non-custodial sentence based on his role in his family, and in particular his position as a caregiver to his wife, children and mother.  Def. Mem. at 15-17.  The defendant's role as caregiver for members of his family does not mitigate his culpability in the criminal conduct here or counsel in favor of a non-Guidelines sentence.  Although the defendant is undoubtedly valuable to his family, he is not a single parent, nor is he the sole available caretaker for any of the individuals he mentions in his submission.  He has two siblings who can help care for his mother and his wife and children; he has an adult child who can help as well, and paid caregivers are also an option.  In short, although the loss of the defendant would no doubt subject his family to difficulty, there are other people in the defendant's life who can step into the caregiving roles he plays.  See United States v. Selioutsky, 409 F.3d 114, 119 (2d Cir. 2005) (rejecting a family circumstances-based departure because, in part, "other relatives could meet the family's needs").  The defendant's family situation does not justify a non-Guidelines sentence.[5]

---

[5] Indeed, almost all defendants who come before the Court for sentencing have family members who will be negatively affected by the imposition of a sentence of incarceration.  As the Second Circuit has repeatedly emphasized, the Guidelines recognize that "disruption of [a] defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration."  United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992); United States v. Sprei, 145 F.3d 528, 534 (2d Cir. 1998) ("family ties and responsibilities are a discouraged basis for departure"); United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003) ("Because the Guidelines disfavor departure based on family responsibilities such a departure is not permitted except in extraordinary circumstances.").

2. <u>The Seriousness of the Offense, Deterrence and Protecting the Public</u>

The Court's sentence should also reflect the seriousness of the offense, promote respect for the law and further the aims of specific and general deterrence. 18 U.S.C. § 3553(a)(2)(B), (C).

The fraud in which the defendant participated targeted national programs relied on by millions of Americans, which has very real implications for individual lives. Congress aptly summarized the effects of health care fraud:

> In whatever form it is found, . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. Rep. 95-393, pt. II, at 44 (1977); <u>see also</u> H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures."). These concerns have only increased over the years, which is why Congress has enacted increasingly severe penalties for health care fraud, directing the Sentencing Commission to add enhancements for defendants who commit the most financially serious health care frauds. <u>See</u> Patient Protection and Affordable Care Act, Pub. L. No. 111-148, §10606(a)(2)(C), 124 Stat. 119, 1007 (2010) (directing Sentencing Commission to amend guidelines in order to punish health care fraud more severely). The defendant's offense was serious and deserves significant punishment.

The sentence imposed must also take into account the need for specific deterrence in order to prevent the defendant from reoffending in this or another manner. Although the defendant will likely lose his medical license because of his conviction, there is a chance he could regain the license in the future and thus be at risk of reoffending. Moreover, the defendant turned to crime and abandoned his ethical principles in exchange for cash. Whether as a result of greed or desperation, as the defendant would have the Court believe, Def. Mem. at 20-21, this decision is one that could readily happen again if he finds himself in similar life circumstances and with access to others' money. A sentence that provides deterrence is warranted.

Further, the court should strongly consider the need for general deterrence. As Judge Garaufis has observed, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." <u>United States v. Johnson</u>, No. 16-CR-457 2018 WL 1997975, at *5 (E.D.N.Y. April 27, 2018) (Garaufis, J.); <u>see also</u> <u>United States v. Martin</u>, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259) ("Congress viewed [general] deterrence as 'particularly important in the area of white collar crime.'"); <u>United States v. Mueffelman</u>, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). This is true, in part, because "[p]ersons who commit white-collar crimes like defendant's are capable of calculating the costs

6

and benefits of their illegal activities relative to the severity of the punishments that may be imposed." Johnson, 2018 WL 1997975 at *5; see also Martin, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks and citation omitted)); Harmelin v. Michigan, 501 U.S. 957, 988 (1991) ("Since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties").

The need for general deterrence is particularly acute where the crime involves a medical doctor who traded on his access to patients and his ability to prescribe prescription medications. See United States v. Howard, 28 F.4th 180, 209 (11th Cir. 2022) (vacating physician sentence that gave insufficient weight to general deterrence and noting that "when the government obtains a conviction in a health care kickback prosecution, one of the primary objectives of the sentence is to send a message to others who contemplate such schemes that their crime is a serious one that carries with it a correspondingly serious punishment" (internal citation and quotation marks omitted)).  A significant sentence of imprisonment in this case would illustrate to licensed medical professionals that taking kickbacks in exchange for prescriptions has very real consequences, and would therefore serve the goals of sentencing.

3. Sentencing Parity

The defendant argues that his sentence should be significantly less than that of Jian Ai "Maggie" Chen, who was sentenced on July 15, 2024, to 30 months' imprisonment, and that his culpability is lower than his other co-conspirators. Def. Mem. at 23-24.  This is simply not true.  The defendant, as a physician, had the highest duty toward his patients, the Medicare and Medicaid systems, and the public trust of any defendant charged in this matter.  He was the gatekeeper and he abused his position for cash.  Although his involvement was limited in time, that is merely a function of the timing of the government's investigation: there is no reason to believe that, had the investigation not come to light, he would have stopped accepting kickbacks to prescribe.  The defendant's relative culpability as against his co-conspirators is moderate to high and his sentence should reflect as much.

V. Restitution and Forfeiture

The government respectfully requests that the Court order the defendant to pay restitution in the amount of $624,959.45, consisting of claims paid by Medicare and Medicaid to AC in connection with the conspiracy, in accordance with the Mandatory Victim Restitution Act and the plea agreement. See 18 U.S.C. § 3663A; Plea Agreement ¶ 1(e); PSR ¶¶ 53, 117. Additionally, in the parties' plea agreement, the defendant agreed to the imposition of a forfeiture money judgment in the amount of $397,404.43, which reflects the defendant's proceeds from the conspiracy, pursuant to 18 U.S.C. § 982(a)(7).  (Plea Agreement ¶ 6; PSR ¶ 118.)  The Court signed the Order of Forfeiture on August 29, 2024.  (ECF No. 38.)  Accordingly, the government respectfully submits that the Court should issue the proposed Order of Restitution attached to this memorandum, and requests that the Court incorporate that Order and the Order of Forfeiture into the judgment of conviction.

VI.    Conclusion

For all the reasons articulated above, the government respectfully requests that the Court sentence the defendant to a term of imprisonment between 24 and 30 months and to pay restitution and criminal forfeiture in the amount and manner set forth above.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

GLENN S. LEON
Chief
Criminal Division, Fraud Section
United States Department of Justice

By:   /s/ Miriam L. Glaser Dauermann
Miriam L. Glaser Dauermann
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
(718) 254-7575

cc:    Jeffrey Chabrowe, Esq. (counsel to defendant) (by email and ECF)
       U.S.P.O. Erica Vest (by email and ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA  ORDER OF RESTITUTION

  – against –  Criminal Docket No. 23-cr-89

JOHN YIU,

    Defendant.

- - - - - - - - - - - - - - - - - - - X

WHEREAS, defendant JOHN YIU pleaded guilty on March 6, 2024, in the above-captioned case,

1. This order of restitution will be incorporated by reference to the Judgment and Commitment Order that will be filed in connection with the above-captioned case.

2. The defendant is directed to pay restitution to the victims named and in the amounts listed in Exhibit A to this order.

3. Restitution is due immediately. The total restitution amount to be paid is $624,959.45 plus interest. *See* 18 U.S.C. § 3612(f). Monthly payments shall be made to the Clerk of the Court, United States District Court, 225 Cadman Plaza East, Brooklyn, N.Y. 11201. The payment instrument shall reference the case name and number, as set forth above.

4. The defendant is jointly and severally liable for the restitution judgment with other individuals to be determined.

5. The Clerk is directed to distribute restitution payments *pro rata* to the victims at least once per year to the extent funds are available to distribute. The United States Department of Probation and the United States Attorney's Office are directed to provide to the Clerk whatever assistance is necessary to assure prompt distribution of restitution payments. The Clerk is directed to mail a copy of the instant document and the attachment to the Criminal

Trial Attorney assigned to the instant case and the Financial Litigation Unit of the United States Attorney's Office of the Eastern District of New York.

6. Pursuant to 18 U.S.C. § 3664(j)(2), the total amount to be paid to each victim pursuant to this order of restitution shall be reduced *pro rata* by all amounts paid by the defendant toward a civil settlement or judgment in *United States ex rel. Moy v. AC Pharmacy Corp. et al.*, 15-cv-5486, as compensatory damages for the same loss for which restitution has been ordered herein.

Dated:   Brooklyn, New York
        October ___, 2024

                                              _____
                                              HONORABLE HECTOR GONZALEZ
                                              UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – X

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Docket No. 23-cr-89 |
| - against - | |
| JOHN YIU, | |
| Defendant. | |

– – – – – – – – – – – – – – – – – – – X

## EXHIBIT A TO ORDER OF RESTITUTION

| VICTIM NAME AND ADDRESS | LOSS AMOUNT |
|---|---|
| (1) Centers for Medicare and Medicaid Services<br>Division of Accounting Operations<br>P.O. Box 7520<br>Baltimore, MD 21207-0520 | $624,959.45 |
| Total Restitution | $624,959.45 (plus interest) |